UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KIM, individually and as assignee of SOLEPLEX INC. d/b/a DANNY K FASHION, <br><br> Plaintiff, <br><br> v. <br><br> GS SPORTS INC. d/b/a MOE'S SNEAKER SPOT, <br><br> Defendant. | Civil Action No. 1:15-cv-09819-AJP <br><br> ECF Case |

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM**
(Supersedes **ECF 41**)

 

Peter Y. Lee, Esq.
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Telefax
Peter.Lee@LeeAdvocates.Com E-Mail
*Attorney for Plaintiff, Daniel Kim*

*Of Counsel and On the Brief*

    Peter Y. Lee

Plaintiff, through his undersigned attorney, respectfully submits an amended memorandum of law in support of his motion to dismiss counterclaim filed June 7, 2016 (**ECF 34**), as amended, pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This is an action by the owner of a former sneaker and sports apparel business against defendant, which owns and operates many sneaker stores throughout New York City and New Jersey.  Plaintiff seeks to collect the unpaid balance of the $775,000 price for the defendant's November 2013 purchase of plaintiff's stores, warehouses and inventory, and obtain a judgment compelling the defendant to defend and indemnify the plaintiff against certain liabilities which the defendant had expressly assumed but never did.

Although it does not deny that it failed to pay plaintiff $275,000 plus interest, the defendant counterclaimed in response, seeking $600,000 in damages (over and beyond the unpaid $275,000 balance) because the plaintiff allegedly swindled the defendant and "wrongfully removed all of the valuable inventory and/or substituted and/or left behind defective merchandise … before delivering the keys": Alternatively, the defendant claims that it received only two of 5 stores promised, along with "an empty warehouse, rather than a warehouse full of 40,000 units of footwear, apparel and accessories." (**ECF 34** at ¶¶12-13.)

Whether the defendant received some goods, if any, is not exactly clear.  Nevertheless, the entire counterclaim omits any allegation or indication that the defendant *ever* notified plaintiff about any noncompliance with the parties' sale agreement.  Assuming defendant's allegations to be true, therefore, the counterclaim -- filed in *2016* -- is the very first time we are learning of one or more problems with plaintiff's inventory, stores, merchandise and goods delivered to the defendant in November 2013.  Under the Uniform Commercial Code, the defendant's claims over

1

"defective" or undelivered goods are time-barred: Whether the defendant received some goods or none, its failure ever to timely notify the plaintiff about any nonconformity with the parties' underlying contract bars its counterclaim.

Respectfully, we are obliged to remind the Court that the defendant was made aware -- at the Rule 16 conference of May 11, 2016 -- about its foregoing pleading deficiencies under the Uniform Commercial Code. Although the Court granted the defendant leave to amend its pleading (**ECF 29**), the amended counterclaim still fails to allege how, when or even whether it ever told plaintiff about any failure goods in accordance with the parties' underlying agreement. Under New York law, such omission is fatal to any claim over defective goods or undelivered goods. The law is premised on common sense: A merchant cannot recover against another in the same line of business without first giving him a reasonable opportunity to cure any noncompliance.

Accordingly, for the following reasons, the plaintiff prays this Honorable Court will dismiss the counterclaim, with prejudice.

## STATEMENT OF RELEVANT FACTS

1) Both parties are in the business of selling sports apparel and footwear. (Complaint at ¶¶5, 7 (**ECF 1**); Amended answer at ¶2 (**ECF 34**).)

2) Pursuant to a $775,000 "agreement for sale of business" dated November 26, 2013 (hereinafter, the "Sale Agreement"), plaintiff promised to deliver to the defendant "five shoe stores" and "all inventory currently in stores and in warehouse," including "footwear, apparel, and accessories." (Amended counterclaim at ¶¶10-11 (**ECF 34**); Sale Agreement (**ECF 1-1**).)

3) At or prior to closing, plaintiff wrongfully "removed all of the valuable inventory and/or substituted and/or left behind defective merchandise … before delivering the keys" to the defendant. Alternatively, the defendant claims it "received an empty warehouse, rather than a

warehouse full of 40,000 units of footwear, apparel and accessories." Furthermore, the defendant "only received two of five stores promised."  (Amended counterclaim at ¶¶12-13 (**ECF 34**).)

4) The defendant paid the plaintiff only $500,000 of the $775,000 due under the Sale Agreement.  A balance of $275,000 remains, plus interest due under the Sale Agreement. (Amended counterclaim at ¶13 (**ECF 34**); Sale Agreement at p. 2 of 5 (**ECF 1-1**).)

5) The defendant now sues, or countersues the plaintiff for money damages arising from the foregoing "defective" and/or undelivered inventory and "stores."  (Amended counterclaim at ¶¶13, 14(b) (**ECF 34**).)

## LEGAL ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a counterclaiming defendant must have pleaded a "'showing,' rather than a blanket assertion, of entitlement to relief" under the New York Uniform Commercial Code.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 fn. 3 (2007), citing Fed. R. Civ. P. 8(a)(2).  A pleading asserting mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do": The counterclaiming defendant must provide the "grounds" of its "entitle[ment] to relief."  Id., 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  Accordingly, dismissal is warranted when the counterclaiming defendant fails to assert factual allegations sufficient to render the asserted claims plausible on their face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("claim has facial plausibility when [counterclaiming defendant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  On a Rule 12(b)(6) motion, any and all facts alleged in a counterclaim are accepted as true and the trial court must draw all reasonable inferences in favor of the counterclaiming defendant.  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008).

In order for a sports apparel and sneaker business to recover money damages from another identical business over "defective" or undelivered goods, the aggrieved merchant and its claim(s) must comply with the Uniform Commercial Code.  N.Y. U.C.C. Law §§2-102, 2-104(1), (3).  Under New York law, whether the aggrieved buyer receives no goods, is provided defective goods, or otherwise receives goods that fail to comply with its agreement with a merchant seller, the buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"  N.Y. U.C.C. Law §2-607(3)(a).  Failure to give such notice or timely reject any non-complying goods, or any other act inconsistent with the seller's ownership of such goods, constitutes a merchant buyer's "acceptance" of those goods.  N.Y. U.C.C. Law §2-606(1); see N.Y. U.C.C. Law §2-607(1)("buyer must pay at the contract rate for any goods accepted").  Timely notice is an absolute prerequisite to recover "damages for any non-conformity of tender."  N.Y. U.C.C. Law §2-714(1).  (An aggrieved merchant buyer certainly can revoke its acceptance but the revocation also "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it[.]"  N.Y. U.C.C. Law §2-608(2).)

The defendant's allegations supporting its counterclaim, as amended, are woefully deficient.  Even if the Court assumes that it was swindled in its underlying purchase of plaintiff's goods/stores, the defendant's failure to give any notice to the plaintiff of the plaintiff's "non-conformity of tender" precludes any claim for damages.  Indeed, the amended counterclaim omits any allegation that the defendant notified the plaintiff about "defective" goods or undelivered goods/stores.  Nor does the amended counterclaim allege that the defendant rejected or attempted to reject any "defective" goods.[1]  Notwithstanding, the defendant's following allegations provide

---

[1] However, "rightful rejection" must be "within a reasonable time after … delivery or tender" and is "ineffective" unless the buyer seasonably notifies the seller."  N.Y. U.C.C. Law §2-602(1).

4

absolutely no way for the Court or plaintiff to determine with any reasonable certainty whether the defendant in fact received any goods in the deal or whether and how many goods were "defective" when tendered by the plaintiff:

> "12. Plaintiff wrongfully removed all of the valuable inventory and/or substituted and/or left behind defective merchandise at the warehouse … before delivering the keys to … the Defendant.
>
> 13. Defendant … received an empty warehouse, rather than a warehouse full of 40,000 units of footwear, apparel, and accessories, all to Defendant's damage in the sum of $600,000."

(Amended counterclaim (**ECF 34**).)  The foregoing allegations, coupled with the defendant's liberal use of conjunctions ("and/or"), are confusing and inconsistent[2] and provide absolutely no way for the Court or plaintiff to determine with any reasonable certainty whether the defendant in fact received any goods and if so, whether any were non-conforming.  In any event, the defendant's allegations, as pleaded, support only one inescapable conclusion: The counterclaim -- filed nearly *3 years* after the closing of the Sale Agreement, and certainly well after the defendant had a reasonable opportunity to inspect the plaintiff's stores and goods -- is the first ever notice of any non-compliance or problem with the Sale Agreement.  Accordingly, no matter how the defendant's allegations are interpreted, the Uniform Commercial Code bars any claim seeking "damages for any non-conformity of tender."  The allegations are insufficient and fail to render the counterclaim plausible on its face.

Any further "amendment" is destined to be futile because the entire premise of the defendant's counterclaim is the alleged nondelivery of goods/stores or delivery of noncomplying goods, neither of which the defendant *ever* notified the plaintiff about within the past *two years*.

---

[2] At the Rule 16 conference on May 11, 2016, defense counsel stated on the record that "about 10,000" units or goods were "defective" when tendered or delivered by plaintiff.  Yet, this representation appears nowhere in the amended counterclaim filed June 7, 2016.

Moreover, on May 11, 2016, the Court had agreed with plaintiff's concerns over the defendant's pleading deficiencies set forth in its original counterclaim (**ECF 14**) and gave the defendant an opportunity to fix its allegations and amend its pleading (**ECF 29**) to accord with the Uniform Commercial Code.  Yet the counterclaim, as amended, warrants dismissal for the very same reasons discussed at the May 11 conference.  (Notwithstanding, the defendant's position begs the question why any reasonable buyer who pays $500,000 and arrives at an "empty warehouse," receives "no goods," or buys "defective" product, would *not* contact his seller.)

## CONCLUSION

For the reasons set forth hereinabove, plaintiff respectfully requests this Honorable Court to grant his motion to dismiss the counterclaim, as amended, and dismiss same with prejudice.

Dated:  New York, New York
        June 29, 2016

Respectfully submitted,

/s/ *Peter Y. Lee*
_____
PETER Y. LEE, ESQ. (PL2405)

60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Peter.Lee@LeeAdvocates.Com

*Attorney for Plaintiff*